IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**BRENDA D. M.,**

    **Plaintiff,**

v.   No. 2:24-cv-00969-JHR

**FRANK J. BISIGNANO,**[1]
**Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [DOC. 9] AND REVERSING COMMISSIONER'S FINAL DECISION

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing [Doc. 9]. The Commissioner of Social Security filed a response [Doc. 17] and Plaintiff replied [Doc. 18]. Pursuant to 28 U.S.C. § 636(c) and Rule 73(b), the parties consented to Magistrate Judge Jerry H. Ritter presiding over Plaintiff's challenge to the Commissioner's final decision. The Court has reviewed the parties' briefing, the administrative record [Doc. 8] ("AR"), and applicable law. The Court **GRANTS** Plaintiff's motion to remand, **REVERSES** the Commissioner's final decision, and will remand for further proceedings consistent with this opinion.

### I.   PROCEDURAL BACKGROUND

Plaintiff filed pro se an application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act on August 11, 2020. (AR 147). Plaintiff alleged an onset of disability on March 31, 2016, caused by discogenic and degenerative back disorders, as well as depression, bipolar disorder, and "[r]elated" disorders. (AR 148). The Administration denied her

---

[1] With his appointment as Commissioner of Social Security on May 7, 2025, Bisignano is automatically substituted as the appropriate party. Fed. R. Civ. P. 25(d).

1

application initially on January 21, 2021, and again upon reconsideration on October 25, 2021. (AR 183, 196). Plaintiff requested a hearing before an administrative law judge ("ALJ") and appeared pro se before ALJ Richard Exnicios on October 31, 2022. (AR 92). After the hearing, the ALJ issued a written decision on July 12, 2023, finding Plaintiff did not qualify as disabled because her impairments would not prevent her from returning to her past relevant work. (AR 21–22).

Plaintiff requested review of the ALJ's decision by the Administration's Appeals Council, but the Appeals Council rejected the request as untimely. (AR 36). Plaintiff engaged counsel, and upon showing good cause received an extension. (AR 29). With her appeal Plaintiff submitted additional evidence in the form of medical opinions by Travis Shivley-Scott and Lynette Abrams-Silva, PhDs, Dr. Austin Davis, and Dr. Davin Quinn. (AR 47–74). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 1). In their denial, the Appeals Council stated it did not admit Plaintiff's additional evidence because it "does not show a reasonable probability that it would change the outcome of the decision." (AR 2). Plaintiff appealed the Commissioner's final decision to this Court pursuant to 42 U.S.C. § 405(g). [Doc. 1].

## II.     STANDARD OF REVIEW

When a party appeals an adverse disability decision the reviewing court must affirm if the ALJ applied correct legal standards and supported his factual findings with "substantial evidence." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). Review calls for common sense, setting aside technicalities to determine whether the court can follow the ALJ's reasoning and application of law. *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Failure to follow legal standards will warrant reversal "independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)

(quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). However, an error in evaluating evidence or applying the proper legal standard will not require remand if it would be "inconceivable" that a different conclusion would be reached absent the error. *Crawford v. Saul*, 487 F. Supp. 3d 1021, 1026 (D. Colo. 2020) (quoting *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Evidence is "substantial" when a reasonable mind would accept it as adequate support for a conclusion—in comparative terms, more than a scintilla but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). To determine if the ALJ met the standard, the court must examine the whole record including any evidence that may undercut or detract from the findings. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The ALJ need not explicitly address all evidence in the record so long as he supports his decision, notes the uncontroverted evidence he does not rely on and the significantly probative evidence he rejects, and explains why. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). But the court may not "reweigh the evidence nor substitute its judgment for that of the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). Even if the reviewing court would resolve the matter differently, it must affirm unless the record overwhelms the factual findings or the decision rests on unsupported conclusions. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

### III.   THE COMMISSIONER'S FINAL DECISION

A claimant who seeks disability insurance benefits under the Social Security Act must demonstrate that she cannot engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

3

423(d)(1)(A). A five-step process guides whether the claimant satisfies that definition of disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v).[2] Those five steps ask (1) whether the claimant is still engaged in a substantial gainful activity; if not, (2) whether the claimant is suffering from any severe impairments significantly limiting her ability to do basic work activities; (3) if so, whether those impairments' severity meet or equal the criteria of a listed impairment; (4) if not, whether the claimant's residual functional capacity ("RFC") would preclude her from performing her past relevant work, and finally; (5) if so, whether the claimant's age, education, experience, and RFC would enable her to perform a substantial gainful activity existing in significant numbers in the national economy. *Id.* In sum, a claimant qualifies for disability insurance if her medical impairments are per se disabling or otherwise prevent her from performing her past work and any other viable work option. *See* 20 C.F.R. § 404.1505(a). Plaintiff bears the burden of proof for the first four steps, but the burden shifts to the Commissioner at step five to prove the claimant could still perform work existing in significant number in the national economy. *Lax*, 489 F.3d at 1084 (citation omitted).

**A.     The ALJ's Findings at Steps One, Two, and Three.**

At step one, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2023. (AR 14). While Plaintiff had worked after her onset date of March 31, 2016, it did not rise to the level of substantial gainful activity. (AR 14). Therefore, Plaintiff had to prove she qualified for disability insurance benefits on or before March 31, 2023. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). At step two, the ALJ found Plaintiff suffered from the following severe impairments: chronic obstructive pulmonary disease (COPD), residual effects

---

[2] Regulations for determining whether a claimant is disabled for both DIB and supplemental security income (SSI) are identical but codified in two separate parts in the Code of Federal Regulations. Part 404 of Title 20 governs DIB while Part 416 governs SSI. The Court cites the applicable regulations in Part 404, but the analogous regulations in Part 416 apply as well.

of a traumatic brain injury (TBI), degenerative disc disease of the lumbar and cervical spine, and fibromyalgia. (AR 14). In addition, the ALJ found Plaintiff had non-severe impairments of carpal tunnel syndrome, migraine headaches, obesity, depression, and anxiety. (AR 14–15).

The ALJ also made findings on the severity of Plaintiff's mental limitations pursuant to the "paragraph B" criteria.[3] *See* 20 C.R.F. § 404.1520a(c)(3). On a scale of none, mild, moderate, marked, and extreme, a claimant that has one extreme mental limitation or two marked mental limitations in four functional areas may satisfy a listed mental disability if other criteria are met. *Ricks v. Kijakazi*, No. 21-cv-00942, 2023 WL 2706569, at *5 (D.N.M. Mar. 30, 2023). In contrast a moderate limitation means a claimant retains a "fair" ability to function in the area independently, appropriately, and effectively. *Id.* The ALJ found Plaintiff had mild limitations in all four "functional areas": (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. (AR 15–16). At step three, the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment. (AR 17).

**B.    The ALJ's RFC Formulation and Step Four Findings.**

The physical exertion requirements for types of work are categorized as sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ determined that Plaintiff had an RFC for medium work, *id.* § 404.1567(b), with the following additional restrictions:

> She can lift and carry 50 pounds occasionally and 25 pounds frequently, sit for six hours in an eight-hour workday, stand for six hours in an eight-hour workday, and walk for six hours in an eight-hour workday. She cannot have high concentrations or prolonged exposure to pulmonary irritants such as odors, fumes, or gases. She can understand, remember, and carryout [sic] detailed and semi-complex instructions.

---

[3] While the ALJ put his mental limitations analysis with his other step two findings, the severity of mental impairments is a part of both step two and step three. *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (citation omitted).

(AR 17).

In explaining his RFC formulation, the ALJ reviewed Plaintiff's descriptions of her impairments, their symptoms, and her daily living activities. (AR 18–19). The ALJ focused on Plaintiff's described physical symptoms, though he referenced her reported anxiety. (AR 19). Then, the ALJ compared Plaintiff's descriptions to her medical history. (AR 19–20). On her depression and anxiety, the ALJ found the record showed "some treatment" in 2017 but mental exams "have been unremarkable." (AR 20). Turning to medical opinions in the record, the ALJ found them consistent with his RFC. (AR 20–21). The only opinion on mental impairments the ALJ discussed came from Richard Sorensen, PhD, who opined the record had insufficient evidence to assess them. (AR 21). The ALJ found Sorensen's opinion "mostly persuasive." (AR 21).

Based on the vocational expert's testimony, the ALJ found that Plaintiff "is able to perform [past relevant work] as actually and generally performed" with her age, education, work experience, and RFC. (AR 21). Because Plaintiff could return to past relevant work, the ALJ concluded that Plaintiff did not qualify for disability insurance benefits. (AR 22).

### IV.  BRIEFING SUMMARY

Plaintiff challenges the ALJ's decision on three grounds. First, Plaintiff argues that the ALJ's limitation of medium work in the RFC did not incorporate the recommendation of agency physician Mark Werner that Plaintiff "should be capable of non-exertional level work" despite finding his opinion "mostly persuasive." [Doc. 9, at 6–7]. If light work had been adopted pursuant to Werner's opinion, the application of the Administration's grid rules would have resulted in a finding of disability. *Id.* at 7. Second, Plaintiff argues the Appeals Council erred by rejecting her additional evidence, which qualified for inclusion in the Appeals Council's merits review of the ALJ's decision. *Id.* at 8–19. Third, Plaintiff asserts that the ALJ's credibility determination with

respect to her reported pain symptoms failed to address probative evidence in the record that supported her testimony. *Id.* at 21–23.

The Commissioner responds that Plaintiff mischaracterizes Werner's recommendation, which did not describe non-exertional work as the most Plaintiff could manage but instead as within her capacity. [Doc. 17, at 15–17]. Regarding Plaintiff's post-hearing additional evidence, the Commissioner asserts the Appeals Council did not "reject" the evidence but instead found it did not warrant review of the ALJ's decision. *Id.* at 18. Nevertheless, the evidence would not justify remand on its substantive merits. *Id.* at 19–22. Finally, the Commissioner argues the ALJ adequately assessed the credibility of Plaintiff's reported pain systems with a supported discussion of her daily activities, course of treatment, and affectation during examinations. *Id.* at 10–15.

In reply, Plaintiff maintains that Werner's comment on non-exertional work constituted a recommended limitation and application of the grid rules would require a finding of disability. [Doc. 18, at 2]. On her additional evidence, Plaintiff argues the Commissioner confused the applicable standard for how the Appeals Council treated it. *Id.* at 5. Given the paucity of evidence in the record on her mental limitations, her additional evidence should have been reviewed as it was new, material, and chronologically pertinent. *Id.* at 6–9. Finally, Plaintiff asserts the Commissioner's assessment of the effects of her reported pain failed to follow the correct legal standard under *Luna v. Bowen* and improperly used cognitive and neurological findings to discount her physical symptoms. *Id.* at 10–12.

## V.     ANALYSIS

The Court finds that the Appeals Council erred as a matter of law in rejecting the reports made by Quinn and Davis, but not the neuropsychological examination performed by Shivley-Scott and Abrams-Silva or Quinn's provider notes. The Court will not address Plaintiff's other

7

arguments as they may be affected by the disposition of the case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**A.      Applicable Law for Consideration of Additional Evidence Post-Hearing.**

When a claimant requests review of an ALJ's hearing determination from the Appeals Council, the Appeals Council must consider additional evidence submitted post-hearing provided certain criteria are met. First, the claimant must prove she had "good cause" for failing to produce the evidence prior to the hearing. 20 C.F.R. § 404.970(b). Good cause includes: (1) the claimant was misled by the Administration's actions, (2) "physical, mental, educational, or linguistic limitation(s)" prevented producing the evidence earlier, or (3) an "unusual, unexpected, or unavoidable circumstance" prevented production. *Id.* § 404.970(b)(1)–(3). As illustrative but not exclusive examples, the Administration offers serious illness, a death or serious illness in the family, destruction or damage of records by an accidental cause, inability to obtain the evidence sooner, or the receiving of a hearing level decision on the record. *Id.* § 404.970(b)(3)(i)–(v).

If the claimant can show good cause, she must then demonstrate the additional evidence is new, material, chronologically pertinent, as well as "a reasonable probability that the additional evidence would change the outcome of the decision." *Id.* § 404.970(a)(5). In order for evidence to be "new," it cannot be duplicative or cumulative of evidence already in the record. *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). To be chronologically pertinent, the evidence need only relate to the time period between the alleged onset date of disability and the date of last insured. *See id.* Therefore, it need not have actually existed prior to the decision itself. *See Padilla v. Colvin*, 525 F. App'x 710, 713 (10th Cir. 2013); *accord* HALLEX I-3-3-6(B)(2).

Prior to the Administration's inclusion of the "reasonable probability" requirement in 20 C.F.R. § 404.970(a)(5), the Tenth Circuit in *Threet* interpreted "material" to mean the evidence only needed a reasonable "possibility" of changing the ALJ's decision. *Threet*, 353 F.3d at 1191.

8

Therefore, this Court has interpreted the inclusion of "reasonable probability" to heighten the materiality standard. *Hite v. Saul*, 457 F. Supp. 3d 1175, 1180 n.6 (D.N.M. 2020); *accord Hanna v. Kijakazi*, No. 20-cv-00132, 2021 WL 3169203, at *5 (D.N.M. July 27, 2021) (collecting District of New Mexico cases). In sum, additional evidence qualifies for consideration if it does not duplicate or needlessly repeat evidence already in the record, relates to the relevant time period considered by the ALJ, and has a reasonable probability of changing the ALJ's decision. *Hite*, 457 F. Supp. 3d at 1180.

Whether additional evidence qualifies for consideration is a question of law subject to de novo review on appeal. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). If the reviewing court finds the Appeals Council rejected additional evidence in error, it must remand for further proceedings. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). However, if the Appeals Council considered the merit of the additional evidence but still upheld the ALJ's decision, then the reviewing court must employ the default substantial-evidence standard of review with use of the entire record. *Id.* Where the Appeals Council states additional evidence was made part of the record, that reflects an implicit determination it qualified for consideration. *Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006). However, where the Appeals Council states additional evidence would not warrant overturning the ALJ's decision by citing one of the criteria under 20 C.F.R. § 404.970(a)(5), that implies the evidence was rejected as a matter of law. *Padilla*, 525 F. App'x at 712.

**B.     The Opinions of Quinn and Davis Submitted by Plaintiff Qualified for Consideration Under 20 C.F.R. § 404.970(a)(5).**

Before the Court can reach the merits of the additional evidence issue, it must address the parties' dispute over the applicable standard and scope of review. Plaintiff argues the Court must review the Appeals Council's treatment of her additional evidence *de novo*. [Doc. 9, at 8]. The

9

Commissioner asserts the Court must use substantial evidence review [Doc. 17, at 18]. In addition, Plaintiff also argues that both the Appeals Council's and the Commissioner's silence on whether she had good cause to submit the additional evidence late waived the issue. [Doc. 9, at 10]; [Doc. 18, at 5]. The Appeals Council stated that it did not "exhibit" Plaintiff's additional evidence because it does not show a "reasonable probability" of changing the ALJ's decision. (AR 2). The Appeals Council's invocation of 20 C.F.R. § 404.970(a)(5)'s review criteria demonstrates the Appeals Council rejected the evidence as a matter of law, not its factual merits in context of the entire record. *Padilla*, 525 F. App'x at 712. Therefore, the issue for the Court is de novo review of whether Plaintiff's additional evidence satisfies § 404.970.

However, this Court's prior decisions do not settle whether review excludes the issue of good cause if the Appeals Council was silent on that matter. *Compare Hite*, 457 F. Supp. 3d at 1183, *with Muskett v. Saul*, No. 20-cv-00006, 2021 WL 826675, at *5 (D.N.M. Mar. 4, 2021) (collecting similar District of New Mexico decisions). The language of § 404.970(a)(5) states the Appeals Council will consider new, material, and chronologically pertinent additional evidence, but only "subject to" the good cause requirement of § 404.970(b). That language suggests good cause is a separate determination. Furthermore, § 404.970(c) requires the Appeals Council to send notice to a claimant explaining why it rejected the additional evidence, including whether late submission lacked good cause. Review of the Commissioner's final decision is limited to the reasons actually given by the Commissioner. *Emmons v. Saul*, No. 19-cv-00102, 2020 WL 376708, at *5 (D.N.M. Jan. 23, 2020). Therefore, because the Appeals Council rejected Plaintiff's additional evidence under § 404.970(a)(5) criteria, the Court will review the application of § 404.970(a)(5) only. *See Chambers*, 389 F.3d at 1142 (limiting review to the new, material, and chronologically pertinent standard where Appeals Council rejected evidence on that ground).

The Court finds the Appeals Council properly rejected the provider notes from Quinn dated March 21, 2024 (AR 61–64) and the neuropsychological evaluation performed by Shivley-Scott and Abrams-Silva (AR 47–58) because they are not chronologically pertinent. The relevant time period for the ALJ's determination is March 31, 2016, to March 31, 2023. Both the notes and the evaluation focused on an assessment of Plaintiff's physical and psychological condition as of the date of examination. (AR 55–58, 62–63). While both took a medical history from Plaintiff dating back to the day of her TBI at age twenty-two, nothing in either of these records suggest their conclusions describe the relevant time period.

The Court finds the medical assessments and listing forms submitted by Quinn and Davis are chronologically pertinent, new, and have a reasonable probability of changing the ALJ's outcome. Both the assessments and the listing forms directed Quinn and Davis to consider the "chronicity of [their] findings as from at least [August 11, 2020]." (AR 65, 67, 69, 71). Where the assessment made and opinion formed by a provider is based on an explicit instruction to consider the relevant period, and no indication suggests the provider acted otherwise, the evidence satisfies the chronologically pertinent criteria. *See Hanna*, 2021 WL 3169203, at *7 (D.N.M. July 27, 2021); *Barela v. Kijakazi*, No. 22-cv-00005, 2022 WL 17722949, at *8 (D.N.M. Dec. 15, 2022). In addition, the assessments and listing forms provide medical opinions on Plaintiff's mental limitations with work-related activities, an issue brought to the ALJ's attention based on Plaintiff's depression, anxiety, and TBI. (AR 15–16). However, the ALJ based his step three assessment of paragraph B criteria solely on general psychiatric observations made by providers during Plaintiff's physical exams and appointments. *E.g.*, (AR 481, 495, 632). The only opinion cited by the ALJ addressing mental limitations in work-related activities came from Sorenson, who stated the record contained insufficient evidence for assessment. (AR 21). Thus, Davis's and Quinn's

11

assessments and listing forms not only avoid duplication or needless cumulation of evidence in the record, but in fact fill parts of the record which are lacking.

The Commissioner argues Davis's and Quinn's assessments and listing forms do not have a reasonable probability of changing the outcome because their conclusions conflict with competent evidence relied on by the ALJ. [Doc. 17, at 21–22]. Furthermore, the Commissioner points out that Plaintiff performed some semi-skilled caregiving work after her onset date, supporting the ALJ's conclusion that she could return to past relevant work. *Id.* at 22. However, the same reasons which make Davis's and Quinn's assessments and listing forms new also demonstrate a reasonable probability of changing the ALJ's outcomes. The primary evidence the ALJ had to assess Plaintiff's mental limitations was general observation at appointments focused on physical examination. (AR 15–16). More comprehensive work-specific mental evaluations could receive far greater weight from an ALJ. *See* 20 C.F.R. § 404.1520c(c).

Davis's mental assessment found moderate to marked limitations in all aspects of understanding and memory, sustained concentration, and persistence, with mild to moderate limitations in social interaction and adaptation. (AR 65–66). Overall, Davis found Plaintiff suffered from marked limitations in three out four Paragraph B functional areas. (AR 67). Quinn, Plaintiff's treating provider, assessed even more severe limitations, concluding Plaintiff suffered from marked limitations in her ability to understand, remember, or apply information and concentrate, persist, or maintain under Paragraph B and *extreme* limitations in her ability to interact with others and adapt or manage herself. (AR 70–71). Those findings, in light of a lack of other medical opinions to the contrary, would produce a far more restrictive RFC that could preclude Plaintiff's ability to work. *See, e.g.*, POMS DI § 25020.010B.3 (critical mental abilities for

unskilled work include regular attendance, sustained routine without special supervision, and appropriate interactions with coworkers and supervisors).

## VI. CONCLUSION

For the reasons above, the Court finds that the medical assessments and listing forms of Quinn and Davis should have been considered by the Appeals Council in its review of the ALJ's decision pursuant to 20 C.F.R. § 404.970(a)(5). Therefore, the Court GRANTS Plaintiff's motion to remand, REVERSES the Commissioner's final decision, and REMANDS for further proceedings consistent with this opinion.

_____
Hon. Jerry H. Ritter
United States Magistrate Judge
Presiding by Consent